**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **YVONNE ANDERSON** AND **JENNIFER BERARDI**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,**<br><br>Defendant. | Civil Case No.:<br><br>Hon.:<br><br>Mag.: |

**COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Yvonne Anderson and Jennifer Berardi (hereinafter, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective Action Complaint and Demand for Jury Trial against Defendant Cellco Partnership d/b/a Verizon Wireless ("Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective action that arises out of Defendant's systemic failure to compensate its employees for all hours worked, including overtime hours worked at the appropriate overtime rate, in willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25, *et seq*. ("North Carolina Wage Act").

2. Defendant is a global telecommunications company that, among other things, "powers and empowers how its millions of customers live, work and play, delivering on their

demand for mobility, reliable network connectivity and security."[1]

3. In providing the aforementioned services, Defendant employed customer service representatives in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Customer Service Advocate and Senior Representative to refer to its call center representative employees (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, handle incoming calls from Defendant's customers regarding their accounts and services.

4. Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5. The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant' CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

6. One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

7. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

---

[1] *See* https://www.verizon.com/about/our-company/verizon-fact-sheet (last visited August 19, 2026).

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), (July 2008), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.

shift and post-shift job-related activities, must be kept." *Id*.

8. Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before their scheduled shifts when they were not logged into Defendant's timekeeping system, which resulted in CSRs not being paid for all overtime hours worked, and overtime gap time, when associated with unpaid overtime and in non-overtime workweeks for regular hours.

9. More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems and loading numerous applications and programs prior to clocking into Defendant's timekeeping system.

10. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject workers to the same illegal conduct in the future.

11. At the earliest time possible, Plaintiffs will request a Court-authorized notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

13. This Court has personal jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

14. This Court has supplemental jurisdiction over Plaintiff Berardi's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

15. Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs and the CSRs, engage in interstate commerce or in the production of goods for commerce and are therefore also covered by the FLSA on an individual basis.

16. The Court has general personal jurisdiction over Defendant because Defendant conducts business within the state of New Jersey and maintains its principal place of business in the state of New Jersey.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because the Defendant conducts business in this District and a substantial portion of the events that give rise to the Plaintiffs' claims occurred in this District.

## PARTIES

18. Plaintiff Yonne Anderson is a resident of Snellville, Georgia. Plaintiff worked for Defendant as a remote Customer Service Advocate from approximately 2006 until December 2025. Defendant compensated Plaintiff for her services as a CSR in the form of an hourly wage, most recently at the rate of $32.00 per hour. Plaintiff Anderson signed a consent to join this collective action, which is attached as **Exhibit A**.

19. Plaintiff Jennifer Berardi is a resident of Wilmington, North Carolina. Plaintiff worked for Defendant as a remote Customer Service Representative from approximately April 2017 through October 2024. Defendant compensated Plaintiff for her services as a CSR in the

form of an hourly wage, most recently at the rate of $25.00 per hour. Plaintiff Berardi signed a consent to join this collective action, which is attached as **Exhibit B.**

20. Defendant is a corporation with its United States corporate headquarters located at One Verizon Way, Basking Ridge, New Jersey 07920.

21. Defendant's registered agent is The Corporate Trust Company located at 800 Bear Tavern Road, West Trenton, NJ 08628.

## GENERAL ALLEGATIONS

22. Defendant employs thousands of CSRs—including Plaintiffs—within the past three years and across the United States to assist its customers with their customer service needs.

23. Defendant paid its CSRs at varying hourly rates.

24. Defendant's CSRs typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

25. While Defendant has access to all payroll records, Plaintiffs do not, and there were one or more instances during Plaintiffs' employment when they worked forty (40) hours or more in a workweek.

26. Prior to being hired, Defendant provided prospective CSRs with a written offer setting forth the CSR's terms of employment, the offered rate of pay, work schedule, and other information.

27. Defendant maintains documents demonstrating the promised hourly wage for each CSR, including, but not limited to, offer letters, paystubs, and/or other payroll records.

28. Plaintiff Anderson's was regularly scheduled to work 8:00 a.m. to 4:30 p.m., Monday through Friday, with a 30-minute unpaid meal period. As such, Plaintiff Anderson's standard schedule was to work 40 hours per week. Consequently, when Plaintiff Anderson worked

her standard schedule, she routinely worked more than 40 hours per week due to her off-the-clock work and thus incurred overtime.

29. Plaintiff Berardi was regularly schedule to work from 10:00 a.m. to 7:00 p.m., Monday through Friday, with a 30-minute unpaid meal period. As such, Plaintiff Berardi's standard schedule was to work 40 hours per week. Consequently, when Plaintiff Anderson worked her standard schedule, she routinely worked more than 40 hours per week due to her off-the-clock work and thus incurred overtime.

30. Similarly, Defendant's CSRs are typically scheduled to work at least eight hours per day (including a half-hour unpaid meal period), five days per week, for up to 40 or more hours in a workweek. If CSRs strictly follow Defendant's standard schedule, they routinely work more than 40 hours per week due to their off-the-clock work and thus incur overtime.

31. Throughout their employment with Defendant, Plaintiffs' and all other CSRs' job duties included fielding inbound calls and performing a wide range of support services to those callers with questions.

32. Defendant provided training to CSRs on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that all of Defendant's CSRs received was substantially, if not entirely, the same.

33. At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

34. In order to perform their job duties, Plaintiffs' and Defendant's CSRs required a computer and a variety of essential and indispensable computer programs, applications, and

servers.

35. Plaintiffs and other similarly situated CSRs were instructed to be call ready the moment their scheduled shift started, yet Defendant prohibited them from clocking in before the start of their shift. This required Defendant's CSRs to be logged into and have loaded all of their essential work-related computer programs and applications prior to the start of their shift so they could be prepared to take calls and/or respond to tickets the moment their shift began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

36. Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start of shift time, as well as the time the CSRs went into a "ready" status. Defendant enforced these policies and procedures by routinely evaluating CSRs and enforcing its overtime policy that prohibited CSRs from working more than 40 hours in a work week without prior approval from their supervisor.

37. All of Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and they could not perform their jobs without them.

38. At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and its CSRs in order to pressure them into performing pre-shift work off-the-clock.

39. The pre-shift off-the-clock time Plaintiffs and all other CSRs spent booting-up/logging into their computers, applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

40. As a result of the pre-shift off-the-clock work described herein, Plaintiffs and all

other CSRs were unlawfully deprived of approximately five to ten minutes of compensation every day.

41. At all relevant times, Defendant was able to track the amount of time Plaintiffs and all other CSRs spent in connection with the pre-shift activities; however, Defendant failed to do so and failed to compensate Plaintiffs and all other CSRs for the off-the-clock work they performed.

42. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

43. Despite knowing Plaintiffs and all other CSRs performed this pre-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

44. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other CSRs booted-up and logged into their computers each day, along with the time they logged into the timekeeping system.

45. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other CSRs experienced technical issues.

46. Because Defendant required its CSRs, including Plaintiff, to perform pre-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

***A. Pre-Shift Off-the-Clock Work.***

47. Upon arriving at their computer, Defendant's CSRs were trained and required to

follow a specific protocol to start up and log into Defendant's network and numerous software programs to access the necessary information to perform their job duties.

48. Before each shift, CSRs were required to undertake essential work tasks, which generally consisted of the following steps: turn on or wake up their computer; log into Microsoft Windows with a username and password; connect to Defendant's virtual private network with a username and password; and open various programs and applications that were integral and indispensable to their job duties as CSRs.

49. Only once all applications were open and loaded could Plaintiffs and the CSRs clock in.

50. Defendant's CSRs had to complete much, if not all, of this process ***before***: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping system; and (3) fielding calls.

51. The boot-up and login process described above took substantial time on a daily basis, ranging from up to fifteen (15) minutes per shift or more depending on how fast/slow the computers, systems, and programs were operating, and whether there technical issues.

52. Defendant's CSRs were not compensated for all of this time because, among other things, Defendant prohibited CSRs from clocking into their timekeeping system until after the boot-up and login time was completed.

53. The pre-shift off-the-clock work CSRs performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as CSRs.

54. Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing

to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40) (overtime gap time); and (3) record all of the time that their CSRs, including Plaintiffs, worked for Defendant's benefit.

55. If CSRs started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their scheduled shifts began and it was time to clock in, and they would therefore receive a tardy on their records and poor schedule adherence scores.

56. Because Defendant's CSRs typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

57. Defendant had express and constructive knowledge that its CSRs began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "call ready" and clocked in on time.

58. Defendant's policies and practices discouraged its CSRs from recording all time worked.

59. The pre-shift off-the-clock work CSRs performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities.

***B. Mid-Shift Off-the-Clock Work.***

60. Defendant promised/provided its CSRs a scheduled 30-minute unpaid meal period during each work shift.

61. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. C.F.R. § 785.19(a).

62. According to the DOL, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. Bona fide meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purposes of eating a regular meal." (*See* DOL Fact Sheet #64, cited herein at fn. 2).

63. Instead of complying with applicable law, Defendant failed to provide its CSRs with legitimate bona fide meal periods because it required the CSRs, including Plaintiffs, to return to their computer stations before the end of their unpaid meal periods to unlock and log back into their computer and programs/applications so they could resume taking calls the moment their meal periods concluded.

64. The off-the-clock mid-shift process took substantial time, approximately five (5) to ten (10) minutes per shift. The process was similar, albeit truncated, to the pre-shift boot-up and login process described herein and this time when uncompensated.

65. Because Defendant's CSRs typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work compensable at 1.5 times their regular rate of pay.

66. The unpaid off-the-clock work Plaintiffs and all other CSRs perform during their meal periods and prior to logging back into Defendant's system is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

67. Defendant's management was aware that Plaintiffs and all other CSRs performed this off-the-clock work but permitted and even rewarded it through Defendant's schedule adherence metrics.

***C. Post-Shit Off-the-Clock Work.***

68. Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other CSRs were required to clock out the moment their scheduled shift concluded when they finished fielding their last customer call for the shift and before completing call documentation, sending emails, closing programs and applications they used during their scheduled shift, and shutting down their computer.

69. This resulted in Plaintiffs and CSRs performing approximately five (5) to ten (10) minutes of off-the-clock work every shift.

70. Thus, in workweeks where Defendant's CSRs worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their CSRs, including Plaintiff, worked for Defendant's benefit.

71. The post-shift off-the-clock work Plaintiffs and all other CSRs performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

***D. The Off-the-Clock Work Results in Viable "Gap Time" Claims.***

72. "There are two types of gap time claims: pure gap time claims—when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours—and overtime gap time claims—when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

73. Plaintiffs, and similarly situated CSRs, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

74. During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices were a deprivation of straight-time wages, in breach of Defendant's employment agreement with their CSRs.

### *E. Defendant's Policy and Practice of Off-the-Clock Work Violates Federal Law.*

75. At all times relevant, Defendant suffered or permitted Plaintiffs, and all other current and/or former CSRs, to routinely perform off-the-clock boot-up and call ready work by not compensating its employees until after they completed the boot-up and call ready procedure.

76. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8.

77. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former CSRs, for their compensable boot-up and call ready work performed in any amount.

78. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of forty (40) hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

79. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former CSRs, for their boot-up and call ready work performed in excess of forty (40) hours in a workweek at one and one-half times their regular rates of pay.

80. Defendant is aware of each and every workweek Plaintiffs wer scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiffs.

81. Defendant is aware of Plaintiffs' regular hourly rate for each and every workweek Plaintiffs worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiffs. Plaintiffs were also paid a shift differential, which is required to be included when calculating Plaintiffs' overtime rate. See 29 C.F.R. § 548.502; §§ 778.108-09.

82. Despite this, Defendant failed to compensate Plaintiffs, and all other current and/or former hourly CSRs working for Defendant, for their compensable boot-up and call ready work performed in workweeks totaling in excess of forty (40) hours at the proper rates, including overtime premiums.

83. In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiffs, and all other current and/or former CSRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all overtime performed by Plaintiffs, and all other current and/or former CSRs, in violation of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

84. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of:

> ***All current and former hourly Customer Service Representatives, or similar positions, who worked for Defendant at any time during the past three years.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

85. Defendant is liable under the FLSA, for inter alia, failing to properly compensate Plaintiffs and others similarly situated.

86. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside

salespersons.

87. Consistent with Defendant's policies and practice, Plaintiffs and the proposed FLSA Collective were not paid for all straight and premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

88. All of the work Plaintiffs and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiffs and the proposed FLSA Collective performed.

89. Defendant was aware, or should have been aware, that federal law required it to pay Plaintiffs and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

90. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the FLSA Collective members, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiffs and the FLSA Collective members, for all overtime gap time; and

c. Willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective members, have worked for the benefit of Defendant.

91. Defendant's unlawful conduct has been widespread, repeated, and consistent.

92. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or

are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

93. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issue—whether the amount of uncompensated pre- and post-shift off-the-clock work—does not vary substantially among the proposed FLSA Collective.

94. Plaintiffs estimate the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

95. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

96. These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 et seq.

97. The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216. Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

98. Plaintiff Berardi brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> ***All current and former hourly Customer Service Representatives, or similar positions, who work or have worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff Berardi reserves the right to amend this definition if necessary.

99. The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff Berardi reasonably estimates there are hundreds of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100. There is a well-defined community of interests among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 North Carolina Class members spent on startup and login activities each shift is compensable time under applicable law;

b. Whether the Rule 23 North Carolina Class members are owed wages for off-the-clock time worked in connection with the activities described in this Complaint; and

c. The proper measure of damages sustained by the Rule 23 North Carolina Class.

101. Plaintiff Berardi's claims are typical of those of the Rule 23 North Carolina Class in that they and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff Berardi's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 North Carolina Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

102. Plaintiff Berardi will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff Berardi retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff Berardi nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

103. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

104. This case will be manageable as a Rule 23 Class action. Plaintiff Berardi and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

105. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

106. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME**

107. Plaintiffs re-alleges and incorporates all previous paragraphs herein.

108. At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

109. At all times relevant to this action, Defendant was engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

110. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

111. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

112. Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

113. Plaintiffs either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

114. The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

115. The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, et seq.

116. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiffs and all the FLSA Collective members to work off-the-clock every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-

overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

117. The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was significant.

118. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207. Further, all "overtime gap time" should have been paid at Plaintiffs' and the FLSA Collective's regular hourly rate.

119. Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiffs and the proposed FLSA Collective members for all work activities but did not.

120. As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NORTH CAROLINA CLASS ACTION
## VIOLATION OF THE NORTH CAROLINA WAGE AND HOUR ACT,
## N.C. GEN. STAT. 95-25.1, *et seq.*

121. Plaintiff Berardi re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

122. At all times relevant to this action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et*

*seq*., and Plaintiff Berardi and the Rule 23 North Carolina Class members were or are employees entitled to the Act's protections.

123. The North Carolina Wage Act mandates that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C.G.S. § 95-25.6.

124. At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff Berardi and the Rule 23 North Carolina Class all owed, earned, and promised wages on their regular paydays.

125. In particular, Defendant, in violation of N.C.G.S. § 95-25.6, failed to pay all straight time wages for unpaid work during pay periods without overtimes, also known as "gap time," owed to Plaintiff Berardi and the Rule 23 North Carolina Class.

126. Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff Berardi and the Rule 23 North Carolina Class members for the time spent on the work activities described in this Complaint.

127. Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff Berardi and the Rule 23 North Carolina Class members have been deprived of compensation due and owing.

128. Defendant's failure to pay Plaintiff Berardi and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff Berardi and the Rule 23 North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages under N.C.G.S. §§ 95-25.22 (al).

129. As a result of Defendant's unlawful acts, Plaintiff Berardi and the Rule 23 North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S. §§ 95-25.6, 95-25.22(a), (al), and (d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually on behalf of all others similarly situated, requests the following relief:

a. An Order certifying this case as a collective action and authorizing notice to putative Collective Members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above (Count I);

b. An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff Berardi's claim under the North Carolina Wage Act (Count II):

c. An Order compelling Defendant to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, phone numbers, and e-mails of all proposed FLSA Collective members and Rule 23 North Carolina Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential Collective Members of their rights under this litigation;

d. An Order designating Plaintiffs to act as the representatives of the FLSA Collective and the Rule 23 North Carolina Class, and undersigned counsel as class counsel for the same;

e. An Order declaring that Defendant violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant violated the North Carolina Wage Act as cited herein;

h. An Order granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA Collective and the Rule 23 North Carolina Class the full amount of damages and penalty damages available by law;

i. An Order compelling a complete accounting of all the compensation Plaintiffs and all others similarly situated are owed;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as required by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

l. An Order awarding such further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs, by and through the undersigned attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 25, 2026

Respectfully Submitted,

*/s/ Achchana Ranasinghe*
*Achchana Ranasinghe*
BROWN, LLC
111 Town Square Place, Suite 400 Jersey City, New Jersey 07310
(877) 561-0000
achchana.ranasinghe@jtblawgroup.com

Jesse L. Young (P72614)* SOMMERS SCHWARTZ, P.C.
141 East Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiffs and the Putative FLSA Collective*

**Pro Hac Vice Forthcoming*